**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
David Gomez (Cal. Bar. No. 301823)
dgomez@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile:  (213) 239-5199

Attorneys for Defendants
Physician Laboratories, Inc.,
Alex Fazeli, and Monroe Fazeli

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA RIVAS, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>PHYSICIAN LABORATORIES, INC., an Arizona corporation; MDX LOGISTICS, a Michigan corporation; SEBAPHARMA GmbH & Co. KG, a corporation organized under the laws of Germany; CVS HEALTH CORP., a Delaware corporation; COSTCO WHOLESALE CORPORATION, a Washington corporation; RITE AID CORPORATION, a Delaware corporation; THE KROGER CO., a Ohio corporation; iHERB, INC., a California corporation; BED BATH & BEYOND, a New York corporation; VITACOST, a Delaware corporation; ALEX FAZELI, an individual; MONROE FAZELI, an individual; and DOES 1 through 100,<br><br>     Defendants. | Case No. SA CV 18-00729 DOC (AGRx)<br><br>The Honorable David O. Carter<br><br>**DEFENDANTS PHYSICIAN LABORATORIES, INC., ALEX FAZELI, AND MONROE FAZELI'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE COMPLAINT**<br><br>Hearing<br>Date: July 2, 2018<br>Time:  8:30 AM<br>Courtroom:  9D<br><br>Complaint Filed:  March 9, 2018 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 2, 2018, at 8:30 AM or as soon thereafter as the matter may be heard, in Courtroom 9D of the United States District Court, Central District of California, located at 411 West Fourth Street, Santa Ana, CA 92701, before the Honorable David O. Carter, Defendants Physician Laboratories, Inc., Alex Fazeli, and Monroe Fazeli will and hereby do move this Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that the complaint fails to state a claim upon which relief can be granted.  Additionally, Defendants Physician Laboratories, Inc., Alex Fazeli, and Monroe Fazeli will and hereby do move this Court to strike the class action allegations from the complaint according to Federal Rule of Civil Procedure 12(f).

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 25, 2018.

This Motion is based upon this Notice, the following Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice and Proposed Order, the pleadings and records in this action, and such other matters as the Court deems necessary and proper to adjudicate this Motion to Dismiss.


DATED:  June 1, 2018                    JENNER & BLOCK LLP


                                        /s/ Kenneth K. Lee
                                        Kenneth K. Lee

                                        Attorney for Defendants
                                        Physician Laboratories, Inc.,
                                        Alex Fazeli, and Monroe Fazeli.

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ...........................................................................3

    I.  Physician Laboratories and MDX Logistics Distribute and Market the Sebamed Line of Skincare Products in the United States.................................................................................................3

    II.  Plaintiff, a Former Disgruntled Employee of MDX Logistics, Filed This Putative Class Action Lawsuit Against Her Former Employer ..............................................................................3

ARGUMENT .....................................................................................................5

    I.  This Court Should Strike Plaintiff's Class Allegations Because She Is Not an "Adequate" Class Representative with Claims "Typical" of the Class .........................................................6

    II.  Plaintiff Has Failed to Plausibly Allege Any Facts That the Sebamed Skincare Products In Fact Do Not Have a 5.5 pH Balance ............................................................................9

    III.  Plaintiff's Claim of Deception Further Fails Because It Is Not Disputed That Sebamed Products Are "Formulated" to Have a 5.5 pH Balance ...............................................11

    IV.  Plaintiff Lacks Article III Standing Because She Does Not Know If the Sebamed Products She Purchased Did Not Have a 5.5 pH Balance ...............................................12

    V.  Plaintiff Has Offered No Factual Allegation to Pierce the Corporate Veil to Hold Dr. Alex Fazeli and Mr. Monroe Fazeli Liable ..............................................................14

    VI.  The Intentional Misrepresentation Claim Must Be Dismissed Because It Lacks the Particularity Required under Rule 9(b) of the Federal Rules.................................................15

    VII.  The Implied Warranty of Merchantability Claim Must Be Dismissed Because The Warranty Does Not Apply In The Present Case .............................................................16

Defendants Physician Laboratories, Alex Fazeli, and Monroe Fazeli's Motion to Dismiss

CONCLUSION ................................................................................................17

Defendants Physician Laboratories, Alex Fazeli, and Monroe Fazeli's Motion to Dismiss

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abbit v. ING USA Annuity & Life Ins. Co.*,
    252 F. Supp. 3d 999 (S.D. Cal. 2017)....................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................2, 5, 10, 11

*Backus v. ConAgra Foods, Inc.*,
    No. C 16-00454 WHA, 2016 WL 7406505 (N.D. Cal. Dec. 22, 2016)....................7

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ....................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................5, 9, 15

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ...............................................................................16

*Daniels v. City of Wyoming*,
    No. 1:15-CV-507, 2016 WL 524356 (S.D. Ohio Feb. 10, 2016)............................7

*Davenport v. Litton Loan Servicing, LP*,
    725 F. Supp. 2d 862 (N.D. Cal. 2010) ...................................................................5

*DeMarco v. DepoTech Corp.*,
    149 F. Supp. 2d 1212 (S.D. Cal. 2001)..............................................................9, 10

*Eclectic Properties E., LLC v. The Marcus & Millichap Co.*,
    No. C-09-00511 RMW, 2012 WL 713289 (N.D. Cal. Mar. 5, 2012),
    *aff'd sub nom. Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...............................................................................14

*Engurasoff v. Coca-Cola Co.*,
    No. 13-03990, 2014 WL 4145409 (N.D. Cal. Aug. 21, 2014)...............................16

*Garcia v. Mercedes-Benz USA, LLC*,
    21 Cal. App. 5th 1259 (2018) ..............................................................................17

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................................6

*Haskell v. Time, Inc.*,
   857 F. Supp. 1392 (E.D. Cal. 1994) .....................................................14

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) .............................................................12

*Hill v. Wells Fargo Bank, N.A.*,
   946 F. Supp. 2d 817 (N.D. Ill. 2013) .....................................................6

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
   275 F. Supp. 3d 910 (N.D. Ill. Aug. 24, 2017)......................................12

*In re Quintus Secs. Litig.*,
   148 F. Supp. 2d 967 (N.D. Cal. 2001) ....................................................6

*Jenson v. IPEX USA, Inc.*,
   No. C08-0016MJP, 2008 WL 5062657 (W.D. Wash. Oct. 27, 2008) ......8

*Johnson v. Bankers Life & Cas. Co.*,
   No. 13-CV-144-WMC, 2013 WL 5442374 (W.D. Wis. Sept. 30, 2013) .................7

*Kamean v. Local 363, Int'l Bhd. of Teamsters, Chauffeurs,
Warehousemen & Helpers of Am.*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ...........................................................8

*Kamerman v. Ockap Corp.*,
   112 F.R.D. 195 (S.D.N.Y. 1986) ...........................................................8

*Kasalo v. Harris & Harris*,
   656 F.3d 557 (7th Cir. 2011) ..................................................................6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..............................................................15

*Li v. EFT Holdings, Inc.*,
   No. CV 13-8832 DSF (CWX), 2015 WL 12159221 (C.D. Cal. Jan. 6,
   2015) ......................................................................................................15

*Longest v. Green Tree Servicing LLC*,
   308 F.R.D. 310 (C.D. Cal. 2015)............................................................6

Defendants Physician Laboratories, Alex Fazeli, and Monroe Fazeli's Motion to Dismiss

*Lyons v. Coxcom, Inc.*,
    718 F. Supp. 2d 1232 (S.D. Cal. 2009) ........................................................6

*Mazur v. eBay Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ..................................................................8

*Murphy v. Directv, Inc.*,
    No. 2:07-CV-06465-JHN, 2011 WL 3328393 (C.D. Cal. Feb. 11,
    2011) .............................................................................................................6

*Norman v. Arcs Equities Corp.*,
    72 F.R.D. 502 (S.D.N.Y. 1976) ....................................................................8

*Owens v. Bank of Am., N.A.*,
    No. 11-CV-4580-YGR, 2013 WL 1820769 (N.D. Cal. Apr. 30, 2013)...................15

*Petrie v. Elec. Game Card, Inc.*,
    308 F.R.D. 336 (C.D. Cal. 2015) ..................................................................6

*Red v. Gen. Mills, Inc.*,
    No. 215-02232, 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) ..............17

*Red v. Kraft Foods, Inc.*,
    No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ...................12

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ...........................12, 13

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d
    1187 (9th Cir. 2001)....................................................................................13

*Stanek v. Saint Charles Cmty. Unit Sch. Dist. No. 303*,
    No. 13-CV-3106, 2017 WL 5971985 (N.D. Ill. Dec. 1, 2017) .................7

*Stuart v. Cadbury Adams USA, LLC*,
    No. CV 09-6295 AHM (CWX), 2010 WL 1407303 (C.D. Cal. Apr. 5,
    2010), *aff'd*, 458 F. App'x 689 (9th Cir. 2011) .........................5, 9, 10, 11

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................15, 16

*Swearingen v. Amazon Pres. Partners, Inc.*,
    No. 13-CV-04402-WHO, 2014 WL 3934000 (N.D. Cal. Aug. 11,
    2014) ...........................................................................................................17

*Tapia v. Davol, Inc.*,
    116 F. Supp. 3d 1149 (S.D. Cal. 2015) ..................................................17

*Thomas v. Costco Wholesale Corp.*,
    No. 12-CV-02908-BLF, 2014 WL 5872808 (N.D. Cal. Nov. 12, 2014) ...............17

*U.S., ex rel. Modglin v. DJO Glob. Inc.*,
    114 F. Supp. 3d 993, 1024, 1028 (C.D. Cal. 2015), *aff'd sub nom.*
    *United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ......................15

*Veal v. Citrus World, Inc.*,
    No. 12-801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013) ..........................................11

*Viggiano v. Hansen Nat. Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................................................17

*Wallace v. ConAgra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) ........................................................................13, 14

*Wright v. Mishawaka Hous. Auth.*,
    225 F. Supp. 3d 752 (N.D. Ind. 2016) .......................................................................7

*Yoon v. Gap, Inc.*,
    No. CV0805712SVWAJWX, 2010 WL 11597565 (C.D. Cal. Oct. 6,
    2010) ..........................................................................................................................8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(b) ....................................................................15, 16

Federal Rule of Civil Procedure 10(c) ...................................................................9, 10

Federal Rule of Civil Procedure 12 ..........................................................................5, 6

Federal Rule of Civil Procedure 23 ..........................................................................6, 7

Federal Rule of Civil Procedure 201 ...........................................................................4

# **INTRODUCTION**

Founded by a Stanford-trained surgeon, Physician Laboratories, Inc. is a small Orange County-based company that distributes the Sebamed line of skincare products in the United States.  The packaging of some of the Sebamed products states that they are "formulated to a pH balance of exactly 5.5 – precisely the pH of healthy skin." Notably, there is no dispute that the products are indeed formulated for a 5.5 pH balance. Nonetheless, Plaintiff Melissa Rivas — a disgruntled former employee of a defendant company that markets and promotes the Sebamed products — filed this class action lawsuit, remarkably alleging that the above statement misled her into buying the Sebamed products.

As an initial matter, this Court should strike the class allegations because Ms. Rivas, by definition, cannot be an adequate or typical class representative.  Federal courts have routinely struck class allegations at the pleading stage where it is self-evident that the case cannot proceed as a class action lawsuit.  Ms. Rivas cannot serve as a class representative because she is a former employee of MDX Logistics, one of the defendants that markets and promotes Sebamed products.  (MDX Logistics is run by Mr. Monroe Fazeli, who is the younger brother of Dr. Alex Fazeli, the founder of Physician Laboratories).  As she testified under oath in another matter, she had a falling out with Mr. Monroe Fazeli and resigned from her job because the work environment allegedly made her "sick to [her] stomach every day."

This Court should also dismiss the claims because they are meritless for the following reasons:

First, Plaintiff has not plausibly shown that the challenged statement — that Sebamed skincare products are "formulated to a pH balance of exactly 5.5" — is in any way false.  Her entire claim of deception is predicated solely on two pH tests that her attorney apparently conducted for purposes of this litigation.  These two tests supposedly show that the pH balance varied from 5.63 to 6.27 on a few samples of Sebamed products, but those very test documents — on their face — undermine her claim of

Defendants Physician Laboratories, Alex Fazeli, and Monroe Fazeli's Motion to Dismiss

deception.  *See* Complaint ("Compl."), Exs. D, E.  These test documents state that the Sebamed "samples were diluted with *deionized water*" and "mixed either by shaking or ultrasonic cavitation" prior to testing.  But it is an incontrovertible scientific fact that the pH of water is *7.0*, which would obviously elevate the 5.5 formulated pH balance of the Sebamed products if they are mixed together.  In other words, the very documents that Plaintiff relies upon to claim deception completely undercut her allegation.

Second, even if this Court somehow credited the two test documents that are facially invalid, Plaintiff's claim of deception still fails because it is factually true that the products are "formulated" to a pH balance of 5.5.  Nowhere in the complaint does she dispute that the products are in fact "formulated" to a pH balance of 5.5.  Rather, Plaintiff ignores the word "formulated," and argues that the packaging is misleading because there may be minor variations in the final pH balance of the finished products.  But common sense dictates that such minor variations in the ingredient amount or content of mass-manufactured products are expected, as they move from formula to the final product on store shelves.  The Supreme Court in *Ashcroft v. Iqbal* directed lower courts to apply "common sense" to smoke out implausible cases — and this lawsuit is a classic example of a case that does not pass muster under *Iqbal.*

Third, this lawsuit should be dismissed for lack of Article III standing because Plaintiff has not shown that the Sebamed products that she actually purchased did not have a 5.5 pH balance.  At best, she has only shown that the pH balance can vary in a few sample products if it is mixed with water that has a 7.0 pH.  A federal appellate court affirmed the dismissal of a similar false advertising claim for lack of standing, and this Court should dismiss this case as well.

Finally, her claims against Dr. Alex Fazeli (the head of Physician Laboratories) and Mr. Monroe Fazeli (the head of MDX Logistics) should be dismissed because she has not alleged any particularized facts to allow her to pierce the corporate veil.  Further, her claim of intentional misrepresentation should also be dismissed because she has not alleged with particularity any claim of scienter by the defendants.

1

2

## FACTUAL BACKGROUND

**I.   Physician Laboratories and MDX Logistics Distribute and Market the Sebamed Line of Skincare Products in the United States.**

Sebapharma Gmbh & Co. KG, a German-based skincare company, manufactures a line of skincare products called Sebamed.  Compl. ¶¶ 1, 15.  The Sebamed products are exclusively distributed in the United States by Physician Laboratories, Inc., a small Orange County-based company founded by Dr. Alex Fazeli, a surgeon who earned his Ph.D. in immunology from Harvard University and his M.D. from Stanford Medical School.  *See id.* ¶¶ 1, 11, and 13.

Monroe Fazeli, who is the brother of Dr. Fazeli, owns MDX Logistics, an Orange County company that markets and promotes the Sebamed products at retail stores.  *See id.* ¶¶ 11, 12, 14.  For example, MDX Logistics hosts demonstration tables at Costco warehouses, where salespersons showcase Sebamed products to potential customers.

The packaging for some of the Sebamed skincare products states that it is "formulated to a pH balance of exactly 5.5 – precisely the pH of healthy skin," and that "pH 5.5 is vital for a healthy skin."  *Id.* ¶ 2.  Notably, there is no allegation in the complaint contesting the fact that the Sebamed products are indeed formulated to have a 5.5 pH.  These factually true statements on the packaging of certain Sebamed products form the basis of this lawsuit alleging deception.

**II.   Plaintiff, a Former Disgruntled Employee of MDX Logistics, Filed This Putative Class Action Lawsuit Against Her Former Employer.**

Melissa Rivas worked as an office administrator at Defendant MDX Logistics until she resigned due to a conflict with her boss, Mr. Monroe Fazeli.  *See* Request for Judicial Notice ("RJN"), Ex. B at 20-21.  Her relationship with Mr. Fazeli had deteriorated to the point that she claimed that she felt "sick to [her] stomach every day," and was "so upset every day and crying" at work.  *Id.* at 91:16-23.[1]  When she tendered

---

[1] This sworn testimony is from Ms. Rivas's deposition in a litigation involving MDX Logistics and Dr. Fazeli's ex-wife, who had served as an executive at both MDX

3

her resignation letter, she said that she walked out of Mr. Monroe Fazeli's office and did not bother responding to Mr. Fazeli's question of why she was resigning.  *Id.* at 90:5-20.

On March 9, 2018, Ms. Rivas filed this putative class action lawsuit against (among others) her former employer, MDX Logistics and Mr. Monroe Fazeli.[2]  She alleges that the packaging of the Sebamed products — which her former employer marketed and promoted at retail stores — misleadingly states that it has 5.5 pH because two purported tests conducted by her attorney for the purposes of litigation show that the pH is above 5.5 in certain samples.  Compl. ¶ 26.  The complaint attaches two so-called "reports of analysis" — each a single page consisting of four sentences and a two and four-entry table — that purport to show that a few Sebamed samples were tested and that their pH balance ranged from 5.63 to 6.27.  *Id.*, Exs. D, E.  Critically, these "reports of analysis" state that the Sebamed samples were "diluted with deionized water" and "mixed either by shaking or ultrasonic cavitation" prior to testing.  *Id.*

The complaint calls the labeling of the Sebamed products "false" and "part of a[n] ongoing scheme and fraudulent advertising campaign perpetrated on the public . . . ." *Id.* ¶¶ 3, 5, 7.  Without providing any specific details, the complaint also claims Dr. Alex Fazeli "knowingly and intentionally authorized the false labeling and marketing . . . to deceive the public . . ." and to "reap millions of dollars in fraudulently procured funds,"

---

Logistics and Physician Laboratories.  As explained in the Request for Judicial Notice, the fact that Ms. Rivas worked at MDX and later resigned is a judicially noticeable fact under Rule 201 of the Federal Rules of Evidence, because its veracity cannot be reasonably disputed.  Further, Ms. Rivas's counsel cannot and will not dispute it because he served as a lawyer for Dr. Fazeli's ex-wife in her litigation against MDX Logistics, and Ms. Rivas had testified as a fact witness in that case because she had served as personal assistant for Dr. Fazeli's ex-wife.

[2] She also names as defendants Physician Laboratories, Dr. Alex Fazeli, Sebapharma GmbH & Co. KG, and seven retailers that sell the Sebamed products. The seven retailers and MDX will file a joinder to this motion.

Defendants Physician Laboratories, Alex Fazeli, and Monroe Fazeli's Motion to Dismiss

and that Monroe Fazeli, Plaintiff's former boss, "knowingly aided and abetted Defendants Physician and Fazeli in the fraudulent scheme." *Id.* ¶ 4.

As a result of the "false representations and promises," the complaint alleges, Plaintiff purchased an unspecified number of unspecified Sebamed products at one or more unspecified times. *Id.* ¶ 7. Plaintiff purports to bring this action on behalf of herself and "[t]he persons similarly situated or class members" who purchased Sebamed Products that were "unlawfully represented" in California between 2014 and 2018. *See id.* ¶¶ 25-26. She brings her claims under the Consumer Legal Remedies Act (CLRA), the False Advertising Law (FAL), Unfair Competition Law (UCL), and three common law claims of intentional misrepresentation, negligent misrepresentation, and breach of implied warranty. *See id.* ¶¶ 31-78.

## **ARGUMENT**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than a mere *possibility* of misconduct, the complaint has not shown the pleader is entitled to relief." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 872 (N.D. Cal. 2010). Rather, the pleader must "allege more by way of factual content to 'nudg[e] his claim'" of unlawful action "'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).

Moreover, "[d]etermining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and *common sense*." *Iqbal*, 556 U.S. at 679 (emphasis added). In light of that guidance from the Supreme Court, courts have regularly dismissed lawsuits where common sense belies the allegations in the complaint. *See, e.g.*, *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011) (affirming dismissal of false advertising lawsuit that "def[ied] common sense").

I.   **This Court Should Strike Plaintiff's Class Allegations Because She Is Not an "Adequate" Class Representative with Claims "Typical" of the Class.__**

It is black-letter law that "a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained." *Murphy v. Directv, Inc.*, No. 2:07-CV-06465-JHN, 2011 WL 3328393, at *2 (C.D. Cal. Feb. 11, 2011). As one federal court put it, Rule 23 of the Federal Rules of Civil Procedure "plainly indicates that the court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23." *Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013); *see also Kasalo v. Harris & Harris,* 656 F.3d 557, 563 (7th Cir. 2011) (court may deny class certification at "an early practicable time," even before plaintiff moves for class certification); *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235 (S.D. Cal. 2009) ("[c]lass allegations may be stricken at the pleading stage" under Rule 12(f)).

Under Rule 23(a), the class representative's claims must be "typical of the claims or defenses of the class" and she must be able to "adequately protect the interests of the class." F.R.C.P. Rule 23(a)(3)(4). Courts have explained that a party being subject to unique defenses will render that party atypical and inadequate. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.") (further citations omitted); *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 344 (C.D. Cal. 2015) ("Unique defenses can go to either the typicality or adequacy of class representatives."); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 323 (C.D. Cal. 2015) ("[W]here a class representative is subject to unique defenses, typicality may not be satisfied.").

Critically, class certification cannot be granted if "the putative lead plaintiff gives the court *any reason to doubt* the ability to meet these fiduciary obligations." *In re Quintus Secs. Litig.*, 148 F. Supp. 2d 967, 970 (N.D. Cal. 2001) (emphasis added). Here, Plaintiff, by definition, raises substantial doubt of whether she can meet the adequacy

and typicality requirements of a class representative under Rule 23.  It is undisputed that Ms. Rivas is a former employee — and an aggrieved one at that — of Defendant MDX Logistics, which marketed to the public the very Sebamed products at issue in this case. *See* RJN, Ex. B at 10:08-13.  Moreover, as an employee at MDX Logistics, she had access to information and knowledge that other putative class members would not have had.  *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (affirming finding that "access to more information" helped render potential named plaintiff atypical). For example, she attached as Exhibit A to her complaint a *confidential* distribution agreement between Sebapharma and Physician Laboratories concerning the Sebamed products at issue in this case.  *See* Compl., Ex. A.

Simply put, Plaintiff, as a former employee of one of the key defendants, is a "wholly inadequate class representative on the face of the allegations . . . because she has a conflict of interest with the class . . . ." *Johnson v. Bankers Life & Cas. Co.*, No. 13-CV-144-WMC, 2013 WL 5442374, at *2 (W.D. Wis. Sept. 30, 2013).[3]  For instance, she would be susceptible to unique defenses because of her former employment with MDX Logistics — a challenge no other class representative would face.  These unique defenses make her both inadequate and atypical.  *See, e.g.*, *Backus v. ConAgra Foods, Inc.*, No. C 16-00454 WHA, 2016 WL 7406505, at *5-6 (N.D. Cal. Dec. 22, 2016) (even though plaintiff may have had standing in mislabeling claim, extensive personal history

---

[3] Federal courts across the country have stricken class allegations on atypicality grounds where it is apparent that the named plaintiff cannot meet her Rule 23 obligations.  *See, e.g.*, *Daniels v. City of Wyoming*, No. 1:15-CV-507, 2016 WL 524356, at *5 (S.D. Ohio Feb. 10, 2016) (striking class allegations for numerous reasons, including atypicality, as part of a motion to dismiss); *Wright v. Mishawaka Hous. Auth.*, 225 F. Supp. 3d 752, 762 (N.D. Ind. 2016) (granting motion to strike along with motion to dismiss, in part for atypicality); *Stanek v. Saint Charles Cmty. Unit Sch. Dist. No. 303*, No. 13-CV-3106, 2017 WL 5971985, at *7 (N.D. Ill. Dec. 1, 2017) (granting motion to strike along with motion to dismiss, in part for atypicality).

Defendants Physician Laboratories, Alex Fazeli, and Monroe Fazeli's Motion to Dismiss

related to facts of the case rendered him inadequate and atypical); *Yoon v. Gap, Inc.*, No. CV0805712SVWAJWX, 2010 WL 11597565, at *5 (C.D. Cal. Oct. 6, 2010) (questions about reliance render representative atypical and inadequate in class action based on alleged misrepresentation to consumers); *Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009) ("[T]he fact that [Plaintiff] may be subject to these defenses at all puts her in a different position from the rest of the putative class," thereby rendering her atypical.); *Jenson v. IPEX USA, Inc.*, No. C08-0016MJP, 2008 WL 5062657 (W.D. Wash. Oct. 27, 2008) (striking putative class representative in part because of susceptibility to unique defenses).

Moreover, the law is clear that "a litigant who bears a grudge against the defendant is not an appropriate class representative." *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986); *see also, e.g.*, *Kamean v. Local 363, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 109 F.R.D. 391, 395 (S.D.N.Y. 1986) ("It is axiomatic that no party can fairly or adequately represent the interests of the absent class, if he is also motivated by interests adverse to the class as a whole."); *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976) ("A class representative who is motivated by spite against a defendant is no different than one which has an adverse pecuniary interest.").

Plaintiff has testified under oath that she quit her job at MDX Logistics because she felt "sick to [her] stomach every day and being so upset every day and crying" at work. RJN, Ex. B at 91:16-23. Her personal animus towards MDX Logistics was apparent when she tendered her resignation letter to Mr. Fazeli, and then walked out of office without answering his question why she was quitting her job. *Id.* at 90:15-20. Indeed, the fact that Plaintiff baselessly names as defendants all the retailers that sell Sebamed skincare products — even though they had no involvement whatsoever in the marketing of the products and no knowledge of the products' pH balance — suggests that it is a transparent ploy to pressure the retailers into ceasing to carry the Sebamed products at their stores.

In sum, this Court should strike the class allegations because Plaintiff, as a former aggrieved employee of one of the key defendants, cannot be an adequate class representative and does not have claims that are typical of those of other class members.

## II.   Plaintiff Has Failed to Plausibly Allege Any Facts That the Sebamed Skincare Products In Fact Do Not Have a 5.5 pH Balance.

Plaintiff's complaint must be dismissed because she does not plausibly allege that the Sebamed products do not have a pH balance of 5.5.  *See Twombly*, 550 U.S. at 570.  Her entire claim of deception is predicated on the two pH "tests" that her counsel apparently conducted for purposes of this litigation and that purportedly show that certain samples of Sebamed products had a pH balance above 5.5.  But Plaintiff's reliance on these two tests is improper.

As an initial matter, this Court should disregard the two documents purporting to show pH test results because they are not "written instruments" within the meaning of Federal Rule of Civil Procedure 10(c).  Under Rule 10(c), a pleading can attach and incorporate a "written instrument," which is "a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement."  *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001) (citation and quotation omitted).  Materials that "satisfy this definition consist largely of documentary evidence, specifically, contracts, notes, and other writings on which a party's action or defense is based."  *Id.* (citation and quotation omitted).

In contrast, documents that do not form the basis of a plaintiff's claims and are generated for the purpose of prosecuting a lawsuit do not fall within this definition.  *See, e.g.*, *id.* at 1220-21; *Stuart v. Cadbury Adams USA, LLC*, No. CV 09-6295 AHM (CWX), 2010 WL 1407303, at *4 (C.D. Cal. Apr. 5, 2010), *aff'd*, 458 F. App'x 689 (9th Cir. 2011).  The *DeMarco* court, for instance, found that considering "an expert affidavit on a motion to dismiss, whether attached to a motion to dismiss or as an exhibit [to] the plaintiff's complaint, forces a district court to confront a myriad of complex evidentiary

issues not generally capable of resolution at the pleading stage." *DeMarco*, 149 F. Supp. 2d at 1221. The expert affidavit, which was made by a "retained expert who had no contact with [the defendant] and no involvement in the [products'] clinical trials," was "merely a piece of evidentiary matter that [did] not exist independently of the complaint." *Id.* at 1220. Similarly, the *Stuart* court, which held an expert report that was generated for the purposes of that litigation was not a written instrument under Rule 10(c), highlighted the "questionable" reliability of the report, particularly because the report did not provide information like which advertisements the subjects were shown, what the packaging said, what year the packaging was from, and so on. *Stuart*, No. CV 09-6295 AHM (CWX), 2010 WL 1407303, at *4.

Here, the two pH "test" documents submitted by Plaintiff must be stricken because they do not form the basis of Plaintiff's claims, did not exist independently of the lawsuit, and were expressly generated for use in this litigation. And without those two tests, there is nothing in the complaint that would even remotely suggest any falsity.

Even if this Court deemed the two tests to be admissible under Rule 10(c), they do not provide any support for Plaintiff's claim of deception. These two documents — on their face — state that the Sebamed samples were "diluted with deionized water" and then "mixed either by shaking or ultrasonic cavitation" prior to testing. Compl., Exs. D, E. As any high school student who took a chemistry class can attest, it is an indisputable scientific fact that deionized water has a pH balance of 7.0.[4] Accordingly, "dilut[ing]" Sebamed products (that are formulated for a 5.5 pH balance) with water that has a higher pH balance (of 7.0) will obviously elevate the mixed sample's pH balance. In other words, the two "tests" that Plaintiff submitted do nothing to disprove that Sebamed products are formulated for a pH balance of 5.5. And without those two tests, the complaint does not "plead[] factual content" that would allow "the court to draw the reasonable inference" that the pH balance is not formulated to be 5.5. *See Iqbal*, 556

---

[4] *See* RJN, Ex. A ("Pure water has a neutral pH of 7.").

U.S. at 678.

**III.  Plaintiff's Claim of Deception Further Fails Because It Is Not Disputed That Sebamed Products Are "Formulated" to Have a 5.5 pH Balance.**

Even assuming for argument's sake that Sebamed products do not have a pH balance of exactly 5.5, Plaintiff's claims still fail because the challenged statements are factually true.  The Sebamed products' labels, as Plaintiff is well aware, state that certain items are "meticulously *formulated* to a pH balance of exactly 5.5."  Compl. ¶ 2 (emphasis added).  The word "formulate" is defined as "to prepare according to a formula."  *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/formulated.  Critically, there is no allegation in the complaint disputing that the Sebamed products are indeed "formulated" to have a 5.5 pH balance.

Rather, Plaintiff glosses over the word "*formulated*" to claim that the Sebamed packaging states that the products themselves *are* exactly 5.5 in pH.  The two verbs are not the same, and should not be treated the same.  Common sense suggests that a mass manufactured product—even if it is *formulated* to have a pH balance of 5.5—will have some minor variance in the finished product.  For example, a cereal box may say that it has a net weight of 18 ounces, but not surprisingly some boxes may have 17.9 ounces and others may have 18.2 ounces.  That is the nature of mass-produced goods.

As the Supreme Court and Ninth Circuit have indicated, courts must use "common sense" to root out implausible cases at the pleading stage.  *Iqbal*, 556 U.S. at 679  ("[d]etermining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and *common sense*") (emphasis added); *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690-91 (9th Cir. 2011) (affirming dismissal of false advertising claims because they "'defy common sense'").

Numerous courts have applied this "common sense" test to dismiss analogous cases where plaintiffs' theory of the case defied common sense.  *See, e.g.*, *Veal v. Citrus World, Inc.*, No. 12-801, 2013 WL 120761, at *4 n.4 (N.D. Ala. Jan. 8, 2013) (rejecting challenge to lawsuit challenging labeling of "fresh squeezed" orange juice because

"common sense dictates that by the time the [bottled orange juice] makes its way to a grocery store and sits on a shelf awaiting purchase, it is no longer 'fresh'"); *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (where plaintiff challenged "made with real vegetables" as misleading because crackers contained only vegetable powder, court dismissed the claim because "a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables"); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 924 (N.D. Ill. Aug. 24, 2017) (applying common sense test to dismiss claim where plaintiffs claimed they did not know packaged, non-refrigerated grated parmesan cheese sold in a plastic container had some preservatives).

Likewise here, common sense dictates that a reasonable consumer understands that mass-manufactured products have some minimal variance in terms of their content or ingredient amount. As one California appellate court put it, "the standard is not a least sophisticated consumer," but rather a reasonable one. *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citation omitted). And a reasonable consumer who uses her common sense and reads these factually true statements would not be deceived here.

## IV. Plaintiff Lacks Article III Standing Because She Does Not Know If the Sebamed Products She Purchased Did Not Have a 5.5 pH Balance.

Plaintiff bears the burden of clearly alleging facts demonstrating she has (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the Defendants and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). Here, Plaintiff has failed to establish an injury in fact because Plaintiff has not shown she has suffered "an invasion of a legally protected interest that is *concrete* and *particularized* and *actual or imminent*, not conjectural or hypothetical." *Id.* at 1548 (emphasis added) (citation and quotations omitted).

Specifically, Plaintiff has failed to establish that the particular product (or products) *she* personally purchased had a pH balance that was not 5.5. At best, Plaintiff only alleges that certain samples of Sebamed (based on a patently flawed testing process) had pH balances that varied slightly from sample to sample. But Plaintiff offers no factual details about her purported purchase of any Sebamed products and whether they had a pH balance of 5.5. In short, Plaintiff has given absolutely *no* indication that the product(s) she personally purchased were from one of the four Sebamed Product lines tested and purportedly found to be deficient.

Because Plaintiff has failed to clearly allege sufficient facts suggesting an injury in fact, sustaining Plaintiff's unsubstantiated claims would require the Court to make several leaps of faith. *See Spokeo*, 136 S. Ct. at 1548 (injury in fact must not be conjectural or hypothetical); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

The Eighth Circuit dismissed similar false advertising claims based on Article III standing grounds. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014). The *Wallace* plaintiffs alleged that Hebrew National beef franks may not actually be kosher as advertised because the ConAgra employees allegedly faced "such pressure to meet a quota of approximately 70% for kosher meat" that "*some* beef was improperly certified as kosher." *Id.* at 1028, 1030 (emphasis added). The Eighth Circuit noted that the plaintiffs had "give[n] no reason to think *all* the beef marked as kosher under the quota did not meet kosher standards," and because it was not discernable from the complaint "how many packages were tainted with non-kosher beef, it [was] unclear whether even a bare majority . . . were not kosher." *Id.* at 1030 (emphasis in original). Indeed, it was "pure speculation to say the particular packages sold to the consumers were tainted by non-kosher beef, while it [was] quite plausible ConAgra sold the consumers *exactly what was promised . . . .*" *Id.* at 1031 (emphasis in original). Because

the plaintiffs had only alleged that a product line contained (or was at risk for containing) a defect and had not alleged "that *their* product *actually exhibited* the alleged defect," the Eighth Circuit held they lacked standing. *Id.* at 1030 (emphasis in original) (citations and quotations omitted).

Here, too, Plaintiff has—at best—only alleged that *some* samples of Sebamed products may not have a pH balance of exactly 5.5 and has given no basis to believe that *all* Sebamed products do not have a pH balance of exactly 5.5. *See* Compl. ¶¶ 3-4. Based on the conclusory allegations in the complaint, it is "pure speculation to say the particular" product(s) sold to Plaintiff did not have a pH balance of exactly 5.5. *Wallace*, 747 F.3d at 1030. Plaintiff, like the plaintiffs in *Wallace*, has failed to establish a particularized and actual injury in fact and thus lacks standing to bring these claims.

## V. Plaintiff Has Offered No Factual Allegation to Pierce the Corporate Veil to Hold Dr. Alex Fazeli and Mr. Monroe Fazeli Liable.

Defendants Dr. Alex Fazeli and Mr. Monroe Fazeli should be dismissed from this action because Plaintiff has pled no facts to pierce the corporate veil. *See Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1403 (E.D. Cal. 1994) ("Because Haskell has failed to allege sufficient facts to warrant piercing the corporate veil, Time Warner is dismissed from the suit.").

No allegations in the complaint are directly related to either of the Fazeli defendants. Instead, Plaintiff merely repeats over and over that the Fazeli defendants (often without specifying which one) "authorized" a corporate party, Physician Laboratories, to engage in fraudulent behavior. Compl. ¶ 4; *see also, e.g.*, *id.* ¶¶ 11-12. Plaintiff is required to allege some theory by which the individual defendants would be liable for corporate acts. Because she cannot do so, her claims against the Fazeli defendants should be dismissed. *See Eclectic Properties E., LLC v. The Marcus & Millichap Co.*, No. C-09-00511 RMW, 2012 WL 713289, at *6 (N.D. Cal. Mar. 5, 2012), *aff'd sub nom. Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d

990 (9th Cir. 2014) ("Because plaintiffs have failed to allege either direct or alter ego liability, the claims against M & M are dismissed.").[5]

## VI.     The Intentional Misrepresentation Claim Must Be Dismissed Because It Lacks the Particularity Required under Rule 9(b) of the Federal Rules.

Plaintiff's claim for intentional and fraudulent misrepresentation is woefully inadequate. "To state a claim for fraud or intentional misrepresentation under California law, a Plaintiff must allege: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Abbit v. ING USA Annuity & Life Ins. Co.*, 252 F. Supp. 3d 999, 1024-25 (S.D. Cal. 2017) (quoting *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209, at *3 (N.D. Cal. Feb. 10, 2011)). Further, Plaintiff's fraud claims must satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b), and must describe the "who, what, when, where, and how of the misconduct alleged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

Plaintiff provides only conclusory allegations regarding Defendants' knowledge and scienter. Although allegations of scienter may be made generally, mere conclusory statements are "insufficient to state a plausible claim under the *Twombly* standard." *Owens v. Bank of Am., N.A.*, No. 11-CV-4580-YGR, 2013 WL 1820769, at *4 (N.D. Cal. Apr. 30, 2013) (dismissing claim that merely alleged defendant "knew or should have known" that its representations were false); *see also, e.g.*, *U.S., ex rel. Modglin v.*

---

[5] Indeed, as discussed below, Alex and Monroe Fazeli are only mentioned in passing as members of a broader conspiracy, and no actual wrongdoing is alleged other than their membership in this conspiracy. *See* Compl. ¶¶ 4, 11-12. This fact alone is sufficient reason to dismiss any claims against Alex and Monroe Fazeli as individuals. *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together."); *Li v. EFT Holdings, Inc.*, No. CV 13-8832 DSF (CWX), 2015 WL 12159221, at *2 (C.D. Cal. Jan. 6, 2015) ("General allegations that 'defendants' were participants in a conspiracy or acting in concert without any stated factual basis are insufficient" to state a claim.).

*DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1024, 1028 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) (absent factual allegations supporting scienter, conclusory statements are not enough to "plead a plausible claim for relief" for fraud claims). Here, Plaintiff does little more than restate the bare legal elements of a fraud claim.

Rule 9(b) further "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65 (9th Cir. 2007) (citation omitted). Plaintiff's allegations do the opposite: Alex and Monroe Fazeli are scarcely mentioned at all, and Physician Laboratories, if discussed individually at all, is often lumped in with Sebapharma. This generalized pleading does not properly state a claim when the topic is a fraudulent conspiracy, as is alleged here. *See Swartz*, 476 F.3d at 764 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together."). Accordingly, Plaintiff's claim for intentional misrepresentation should be dismissed.

## VII.  The Implied Warranty of Merchantability Claim Must Be Dismissed Because The Warranty Does Not Apply In The Present Case.

Plaintiff's claim for breach of the implied warranty of merchantability is invalid for two reasons. First, the implied warranty is only breached when the products at issue lack "even the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009). Second, Plaintiff lacks privity with Physician Laboratories, Alex Fazeli, and Monroe Fazeli, rendering the warranty inapplicable to those defendants.

Plaintiff's claim for breach of the implied warranty of merchantability must be dismissed because the warranty does not cover bare mislabeling claims. Specifically, "in the absence of any allegation regarding the product's basic degree of fitness for ordinary use," mere labeling allegations are not "sufficient to state a claim for the breach of implied warranty." *Engurasoff v. Coca-Cola Co.*, No. 13-03990, 2014 WL 4145409,

at *5 (N.D. Cal. Aug. 21, 2014); *see also Swearingen v. Amazon Pres. Partners, Inc.*, No. 13-CV-04402-WHO, 2014 WL 3934000, at *1 (N.D. Cal. Aug. 11, 2014) ("[T]he plaintiffs have not alleged that the products lack even the most basic degree of fitness for ordinary use.  Their implied warranty claim therefore fails."); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (rejecting implied warranty claim based solely off of alleged labeling misrepresentations).  In other words, the implied warranty "does not guarantee a perfect product," instead, it only provides consumers with "a minimum level of protection against product defects."  *Red v. Gen. Mills, Inc.*, No. 215-02232, 2015 WL 9484398, at *6 (C.D. Cal. Dec. 29, 2015); *see also Thomas v. Costco Wholesale Corp.*, No. 12-CV-02908-BLF, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014) ("Mislabeling of a product is not the sort of 'fundamental defect' that the implied warranty of merchantability is designed to protect against").  Plaintiff's claim should therefore be dismissed because the implied warranty was not meant to apply to mere labeling claims such as this one.

Even if the implied warranty of merchantability applied in this case, Plaintiff would be unable to state a claim against Physician Laboratories, Alex Fazeli, and Monroe Fazeli.  The implied warranty of merchantability requires privity between the parties to apply.  Plaintiff admits that she purchased the products at Costco and Rite Aid. Compl. ¶7.   Therefore, Plaintiff's claim should be dismissed as to Physician Laboratories, Alex Fazeli, and Monroe Fazeli.  *See Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1160 (S.D. Cal. 2015) (dismissing breach of the implied warranty of merchantability claim with prejudice for lack of privity); *Garcia v. Mercedes-Benz USA, LLC*, 21 Cal. App. 5th 1259, 1268 (2018) ("[A] plaintiff seeking to recover for breach of an implied warranty of merchantability must prove privity with the breaching party.").

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's complaint with prejudice and, to the extent the entire complaint is not dismissed, this Court should strike

17

the class allegations from the complaint.

DATED:  June 1, 2018                    JENNER & BLOCK LLP


                                        /s/ Kenneth K. Lee

                                        Kenneth K. Lee

                                        Attorney for Defendants
                                        Physician Laboratories, Inc.,
                                        Alex Fazeli, and Monroe Fazeli.

Defendants Physician Laboratories, Alex Fazeli, and Monroe Fazeli's Motion to Dismiss